IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

MARCI HANEY                              )
and LOTUS ENTERTAINMENT                  )
ACHIEVEMENT PROGRAM,                     )
                                         )
          Plaintiffs,                    )    TC-MD 230349N
                                         )
     v.                                  )
                                         )
MARION COUNTY ASSESSOR,                  )
                                         )
          Defendant.                     )    **DECISION**

Plaintiffs appeal Defendant's exemption denial for property identified as Account 582427

(subject property) for the 2023-24 tax year. The subject property is a three-studio dance facility.

(Compl at 4-5.) Plaintiffs claim exemption based on use of the subject property by Lotus

Entertainment Achievement Program (LEAP). (*Id*. at 3.) Defendant moved for summary

judgment and the parties filed written briefings on that motion.

## I. STATEMENT OF FACTS

The subject property is a 4,782-square foot facility with three distinct studios and

common space composed of bathrooms, a front office with lobby, and storage area. (Compl at 3,

Stip Facts at 2.) "Studio A has a wood floor and is approximately 950 square feet[.]" (Stip Facts

at 2.) "Studio B has ballet bars and a Marley floor and is approximately 605 square feet[.]" (*Id*.)

"Studio C is the acrobatic room and is approximately 1664 square feet." (*Id*.) "LEAP uses all of

the subject property." (*Id*.) Lotus Studio, LLC, (Lotus) also operates out of the subject property,

"offering 13 adult yoga and fitness classes per week." (*Id*. at 1.) "LEAP exclusively utilizes

approximately 70 [percent] of the subject property, and Lotus and LEAP share the use of the

remaining 30 [percent] of the subject property." (*Id*.) LEAP and Lotus are co-lessees of the

subject property, paying $7,173 per month rent. (*Id*.) LEAP contributes approximately $6,455.76 per month. (Ptfs' Resp at 3.) Plaintiff, Marci Haney, is the President of LEAP and the manager of Lotus. (Stip Facts at 1.) "LEAP has a webpage on Lotus's website." (*Id*. at 2.)

A.    *LEAP Organization*

LEAP is organized as a public benefit nonprofit corporation that is exempt from federal taxation under Internal Revenue Code (IRC) section 501(c)(3). (Stip Facts at 1.) LEAP's purpose is stated as follows: "[LEAP] was created to transform the lives of economically disadvantaged students through dance, theater training, and performance arts." (*Id*. at 2.) For the 2023-24 program year, LEAP offered 24 classes per week and enrolled 105 students. (*Id*.) LEAP charged $65 per class, and, on average, students attended "one class per week" or 48 classes per year. (*Id*.) LEAP received approximately $78,120 in class fees per year. (*Id*.)

B.    *Volunteer Work on Behalf of LEAP*

LEAP classes were taught by volunteer instructors who did not receive compensation for their time. (Stip Facts at 2.) The value of the volunteered time was approximately $48,920 per year. (*Id*.) Haney estimated that volunteer instructional time "constitutes 38-40 percent of the value of every dance class." (Ptfs' Resp at 2.)

C.    *LEAP Scholarship Program*

LEAP maintained a scholarship program for its dance students. (Stip Facts at 2-3.) The purpose of the scholarship program was "to waive or reduce the monthly class fees for underprivileged students who would normally not be able to participate in an extra-curricular activity." (*Id*.) For the 2023-24 year, LEAP awarded three scholarships to offset the cost of the dance lessons in the amounts of $400, $350, and $300. (*Id*. at 3.)

/ / /

LEAP's scholarship program guidelines state that scholarships are awarded "based on financial need, artistic ability and promise, availability." (Ex B at 1.) To be eligible for a scholarship, students (1) "must reside in Marion or Polk County of Oregon," (2) "must have taken classes in dance for at least [one] year," (3) "must be between 3 through 17 years of age," (4) "must have a good dance attendance record," (5) "must have a financial need based on [specified criteria]," and (6) "must be enrolled in one or more dance classes that participate multiple days each week." (*Id.*) With respect to "financial need," LEAP required applicants to submit proof of household income through documents such as a federal income tax return or other documents pertaining to public benefits. (*See id*.) Upon receipt of a scholarship, a student accepts certain conditions, including enrollment "in one or more dance classes that participate multiple days each week." (*Id*.)

D.    *LEAP's Property Tax Exemption Application Denial*

LEAP applied for a property tax exemption as a "charitable institution" under ORS 307.130. (Ex C.) Defendant denied that application based on its determination that LEAP was not a "charitable institution" within the meaning of ORS 307.130(2), finding instead "that the use of the portion of the building being claimed for exemption is primarily a member-based dance studio; charity is not the primary use, but rather a by-product." (Ex D.)

II.  ANALYSIS

The ultimate issue in this case is whether the subject property is exempt from property taxation under ORS 307.130 for the 2023-24 tax year.[1] The issue was presented in Defendant's motion for summary judgment and related briefing. Summary judgment is proper where, construing the facts in the light most favorable to the non-moving party, "there is no genuine

---

[1] References to the Oregon Revised Statutes (ORS) are to 2021.

issue as to any material fact" such that "the moving party is entitled to prevail as a matter of law." Tax Court Rule (TCR) 47 C.[2] As the party seeking affirmative relief, Plaintiffs bear the ultimate burden of proof and must establish their case by a preponderance of the evidence. ORS 305.427. A "preponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971). Property tax exemptions are strictly but reasonably construed against the taxpayer claiming exemption. *SW Oregon Pub. Defense Services v. Dept. of Rev.*, 312 Or 82, 88-89, 817 P2d 1292 (1991).

ORS 307.112 and ORS 307.130(2) exempt from property taxation certain property leased by an incorporated charitable institution that is "actually and exclusively occupied or used" in the charitable work of the institution.[3] To be a charitable institution under ORS 307.130(2), an organization must satisfy three elements: "(1) the organization must have charity as its primary, if not sole, object; (2) the organization must be performing in a manner that furthers its charitable object; and (3) the organization's performance must involve a gift or giving." *SW Oregon*, 312 Or at 89. The dispute here concerns the first and third elements.

A.    *Whether Charity Is LEAP's Primary Object*

The first part of the *SW Oregon* test requires that the organization "have charity as its primary, if not sole, object[.]" 312 Or at 89. This requirement examines the character of the organization. *Dove Lewis Mem. Emer. Vet. Clinic v. Dept. of Rev.*, 301 Or 423, 427, 723 P2d 320 (1986), *see also* OAR 150-307-0120(4)(b).[4] The articles and bylaws of the organization

---

[2] TCR 47 is made applicable by TCR-MD 13 B, which provides that "[t]he court may apply TCR 47 to motions for summary judgment, to the extent relevant."

[3] Actual and exclusive use is not at issue in this case.

[4] "[T]he activity conducted by the charitable institution must be for the direct good or benefit of the public or community at large. Public benefits must be the primary purpose rather than a by-product." OAR 150-307-0120(4)(b).

"are prima facie evidence of the character of the corporation." *Dove Lewis*, 301 Or at 427.

Defendant argues that LEAP's primary purpose is not benefitting the public, but rather "running a dance school with an eye towards self-sufficiency." (Def's Mot Summ J at 7.) Plaintiffs did not provide LEAP's bylaws, but its mission statement articulates a charitable object to "transform the lives of economically disadvantaged students through dance, theater training, and performance arts." (Stip Facts at 2.) This court has previously recognized that "providing athletic opportunities to children and adults is a beneficial activity that may constitute charity." *Columbia Empire Region Volleyball Ass'n v. Multnomah County. Assessor,* TC-MD 150421N, 2016 WL 4547047 *6 (Or Tax M Div, Aug 30, 2016). Because LEAP is a nonprofit organization with a mission of providing athletic and creative opportunities to a disadvantaged subset of the community it serves, LEAP has demonstrated that charity is its primary object. LEAP therefore satisfies the first element of the *SW Oregon* test for charitable institutions.

B.      *Whether LEAP Provides Sufficient Gift or Giving*

The third part of the *SW Oregon* test requires that "the organization's performance must involve a gift or giving." 312 Or at 89. The element of gift or giving is crucial to determining whether an organization is charitable. *Dove Lewis*, 301 Or at 428. Whether an organization's performance involves gift or giving is considered from the perspective of "the recipient of the charitable giving." *SW Oregon*, 312 Or at 91. Defendant argues that the element of gift or giving is insufficient because LEAP allocates less than four percent of its revenues towards scholarships. (See Def's Mot at 4, acknowledging that no "bright line test" exists for gift and giving, but noting four percent was insufficient in *YMCA of Columbia-Willamette v. Dept. of Rev.*, 308 Or 644, 653-54, 784 P2d 1086 (1989).) Plaintiffs respond that LEAP's operation involves two types of gifts and giving: offering need-based scholarships to reduce the fee of

dance classes and relying exclusively on volunteers to teach the dance classes.  (*See* Ptfs' Resp at 3.)  Plaintiffs maintain the donated labor from LEAP's volunteer instructors should be included in the calculation of the total amount given in scholarships.  (*See id*. at 3-4.)

This court has rejected a "quantitative approach" to gift or giving, instead focusing on a "qualitative approach" as "more in keeping with the cases of this court and of the Supreme Court on the subject of exemption for charitable institutions."  *Dept. of Rev. v. New Friends of Beaverton City Library*, 23 OTR 512, 542 n 8 (2019).  In the context of a fee-charging organization, the Oregon Supreme Court has identified the following non-exhaustive list of factors as relevant to determine if the element of "gift or giving" is satisfied:

> "(1) Whether the receipts are applied to the upkeep, maintenance and equipment of the institution or are otherwise employed;
>
> "(2) Whether patients or patrons receive the same treatment irrespective of their ability to pay;
>
> "(3) Whether the doors are open to rich and poor alike and without discrimination as to race, color or creed; and
>
> "(4) Whether charges are made to all and, if made, are lesser charges made to the poor or are any charges made to the indigent."

*SW Oregon,* 312 Or at 86-87.  In addition to the forgoing factors, the court also considers LEAP's reliance on volunteer instructions as indicia of its charitable nature.

1.      *Use of LEAP's receipts*

The first factor requires "that revenues received by an institution organized for a charitable purpose must be used in furtherance of the charitable purpose of the institution rather than, for instance, the enrichment of the private individuals that control the institution."  *Hazelden Foundation v. Dept. of Rev.*, 21 OTR 245, 252 (2013).  LEAP class fees are used to cover its portion of the subject property rent: LEAP made approximately $78,120 per year and

paid approximately $77,469 per year to rent the subject property. The court concludes that LEAP's revenues from class fees were used in furtherance of its purpose as opposed to enriching any private individuals. This factor supports Plaintiffs.

2.    *Treatment of patrons based on ability to pay*

The second factor asks whether students receive the same treatment irrespective of their ability to pay for classes. Recipients of the dance scholarships participate in the same dance classes as students paying full price. But to receive a scholarship, a student must have taken dance classes for a year and be enrolled in one or more classes that participate multiple days each week. Thus, to be eligible for a scholarship, a student must have paid over $3,000 per year and must continue to do so.[5] In the context of an addiction treatment facility, this court observed that "equal treatment of patients after they have been admitted is a hollow sort of charity if the ability of a patient to pay for treatment instead simply acts as a bar to admission in the first place." *Hazelden*, 21 OTR at 253. This factor weighs somewhat in Plaintiffs' favor but is undercut by the requirement that scholarship recipients pay for a significant portion of class fees.

3.    *Whether the doors are open to rich and poor alike and without discrimination*

Defendant does not allege that LEAP engaged in discrimination, so the question is whether LEAP's doors are open to rich and poor alike. "[F]ailure by taxpayer to show that its doors are indeed 'open to rich and poor alike' would severely undermine the case for the presence of 'gift or giving.'" *Hazelden*, 21 OTR at 25. Here, the court examines LEAP's scholarship program from the perspective of the recipient. In another case involving youth

---

[5] Total annual class fees are approximately $3,120 ($65 per class x 48 classes per year), so a $400 scholarship represents 12.8 percent of total annual class fees. To be eligible for a scholarship, students must be enrolled for in one or more classes that meet "multiple days each week," indicating that scholarship recipient will pay more than $3,120 per year in order to accept the scholarship.

sports, the court determined that a program requiring individuals to pay between $800 and $1,300 even after receiving a $500 scholarship was still too expensive to be open to the rich and poor alike. *Columbia Empire Region Volleyball Ass'n,* 2016 WL 4547047 at *6. LEAP's scholarships are contingent on having taken at least one year of classes at a minimum cost of $3,120 per year and continued enrollment in classes that meet multiple times per week, a cost exceeding $3,120 per year. Even with a $400 scholarship (the most awarded by LEAP), a student would have to pay more than $2,720 per year. It is unclear how a poor or indigent student could afford those fees. Accordingly, the court finds that LEAP's doors are not open to the rich and poor alike. This factor weighs against Plaintiffs.

### 4.  *Charges to patrons, sliding scale, fee waiver*

Given that LEAP charges all participants, the question under the fourth factor is whether "lesser charges made to the poor or are any charges made to the indigent." LEAP's scholarship program considers financial need, among other factors, and potentially offers a discount of just under 20 percent off on year of class fees.[6] It does not appear that anyone may participate in LEAP without paying a fee. "The existence of a need-based sliding scale * * * weighs, at the margins, in favor of" gift or giving, but the details of the program are important. *Serenity Lane, Inc. v. Lane County Assessor*, 21 OTR 229, 239 (2013). "If, as a practical matter, the poor and the indigent are still generally unable to access the services of an institution despite the existence of a need-based sliding scale of fees, then the institution may well be admirable, but it is not charitable." *Id.* Here, the poor and indigent must still pay in excess of $3,120 per year to access LEAP classes. This factor weighs against Plaintiffs.

---

[6] Scholarship guidelines indicate the maximum potential scholarship is $600 compared to $3,120 for one year's worth of classes that meet once per week for 48 weeks. (*See* Ex B.)

5.      *Volunteer labor, below market rates*

Plaintiffs argue that the value of volunteer instructor time should be counted toward LEAP's gift or giving. Plaintiffs note that LEAP's class fees are designed to cover the cost of rent and not instructional time; class fees would be significantly higher if they covered paid instructors. (*See* Ptfs' Resp at 2.) The value of donated instruction time is $48,920 per year. "The fact that individuals provide volunteer labor to assist the organization in performing its activities may indicate that the organization is charitable. However, it is not a standard in determining whether an organization is charitable per se." OAR 150-307.0120(4)(d)(D). The court agrees with Plaintiffs that the willingness of individuals to provide volunteer labor to assist with LEAP's activities is a factor that weighs in favor of Plaintiffs.

In arguing that class fees would be higher if they covered paid instruction, Plaintiffs may mean to suggest that LEAP provides below market rates to all participants. *See* OAR 150-307.0120(4)(d) (acknowledging that an organization's delivery of services "at a price below the market price or the price to the organization of the product or service" might indicate an element of gift or giving). Unfortunately, Plaintiffs did not provide sufficient evidence of the market rate for dance classes for the court to determine whether LEAP's rates are below market. However, the fact that LEAP's prices are subsidized by volunteer instruction weighs in Plaintiffs' favor.

6.      *Gift or giving conclusion*

Upon considering the relevant factors in this case, the court is not persuaded that LEAP's performance involves sufficient gift or giving to qualify as a charitable institution. The court appreciates that LEAP operates with significant volunteer assistance and recognizes that volunteer labor weighs in favor of Plaintiffs. Although LEAP provides a few scholarships, the amounts and number of scholarships are modest in the context of the LEAP program, such that

the court is unable to conclude that LEAP is accessible for poor and indigent students.  The court finds insufficient gift or giving to conclude that LEAP is a charitable institution.

## III.  CONCLUSION

After careful consideration, the court finds that LEAP's performance does not involve sufficient gift or giving to qualify as a charitable institution under ORS 307.130(2).  Plaintiffs' appeal must be denied.  Now, therefore,

IT IS THE DECISION OF THIS COURT that Defendant's Motion for Summary Judgment is granted, and Plaintiffs' appeal of Account 582427 for the 2023-24 tax year, is denied.

_____
ALLISON R. BOOMER
PRESIDING MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.*

*This document was signed by Presiding Magistrate Allison R. Boomer and entered on September 24, 2024.*